### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON DUANE SPADT,<br><br>Defendant. | **CR 25-103-GF-BMM**<br><br><br>**ORDER ON MOTION TO SUPPRESS** |

## INTRODUCTION

A Grand Jury Indicted Jason Duane Spadt ("Spadt") with one count of prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Spadt seeks to suppress evidence seized through a warrantless search of his vehicle by Montana state probation officers. (Doc. 42 at 4.) The Government opposes. (Doc. 46.) The Court held a hearing on April 22, 2026. (Doc. 53.)

## BACKGROUND

Deputy U.S. Marshall Dave Riley contacted Great Falls Police Department Officer Zaine O'Meara at approximately 4:40 p.m. on March 5, 2025. (Doc. 42 at 2.) Riley reported that there were "females and a male" walking between a white Pontiac Sedan and a Chevy Silverado around the Travel Lodge Hotel. (*Id.*) Riley

1

reported to O'Meara that "the occupants['] behavior was indicative of narcotics related activity." (*Id*.) Riley also advised O'Meara that Spadt, the registered owner of the Silverado, was currently on Montana state probation from Missoula County. (*Id*., citing Ex. 1, Officer O'Meara's Report.)

O'Meara went to the area and saw a woman in a pink sweater walking near a man in a blue sweater. (*Id*.) Riley confirmed that these were the people to whom he had been referring in his report. (*Id*.) O'Meara saw that the white Pontiac described by Riley began to drive away from the Travel Lodge. (*Id*.) O'Meara stopped the Pontiac based on an expired registration, and in speaking with the driver, determined that the driver of the Pontiac "did not appear to be involved in any activity with the occupants of the Silverado or the people walking around the vehicles." (*Id*.) O'Meara testified at the hearing that he did not see any drug paraphernalia or relevant evidence in plain view that would have supported probable cause for a search of the car. (Doc. 53.) O'Meara testified that he instead chose to focus his efforts on the Chevy Silverado due to the limited time available. (*Id*.)

O'Meara saw the woman in the pink sweater and the man in the blue sweater walk past his car, looking at him "intently" during his stop of the Pontiac. (*Id*.) O'Meara also saw the Chevy Silverado described by Riley drive past, seemingly following the man and woman. (*Id*.) The Chevy Silverado slowed down and indicated a stop that appeared to be in front of the Rescue Mission. (Doc. 51, Ex. 4.)

2

The Chevy Silverado instead proceeded to turn right where the Rescue Mission is located and stop around the corner. (*Id.*)

The man and woman got into the Silverado in front of the Rescue Mission and it continued driving. (Doc. 42 at 2.) O'Meara followed the Silverado and pulled over the truck after it made a "sudden" left turn without using a signal from 4th Street South to 7th Alley South. (*Id.*) The three people in the car—Spadt, the woman in the pink sweater, and the man in the blue sweater—were sitting in the front bench seat. (*Id.*) O'Meara asked for identification from all three. (*Id.*) The rightmost passenger, Gary Kelley, advised that he had warrants. (*Id.*) O'Meara asked if any of them were on probation and Spadt "hesitated" to notify O'Meara, apparently "pretending that he couldn't remember if he was or not." (*Id.*) O'Meara and another officer proceeded to detain Kelley, Mirandize him, and question him about the situation. (Doc. 51, Ex. 4.)

O'Meara contacted the Montana State Probation and Parole field office and requested that they respond to assist with Spadt "due to his probation status." (Doc. 42 at 2.) State Probation Officers Spencer, Kaeser, and Vogt eventually arrived and "the three of them decided that they were going to conduct a search of Spadt's vehicle as a result of his probation conditions." (*Id.*) The state probation officers had decided before arriving at the scene and having made contact with Spadt that they would detain Spadt and search Spadt's vehicle based on his apparent probation

3

violations. (Doc. 53.)

The Montana state probation officers had reviewed the chronological notes in Spadt's probation file and noted that no entries existed from October 2024 to the date of the stop in March 2025. (*Id*.) The lack of notes over that extended period of nearly five months suggested to the state probation officers that Spadt had failed to maintain contact with his probation officer since October 2024. (*Id*.) The absence of any claim file entry granting permission to Spadt to travel to Great Falls also suggested to the state probation officers that it proved more likely than not that Spadt had been violating his terms of supervision by being in Great Falls. (*Id*.) The state probation officers detained Spadt and searched his vehicle. (Doc. 51, Ex. 4.) The state probation officers located the firearm that is the subject of the instant indictment during the search, and other items, including other suspected contraband. (Doc. 42 at 2.)

## LEGAL STANDARD

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. The Fourth Amendment's "overriding function" protects personal privacy and dignity against unwarranted intrusion by the State. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Searches and seizures conducted without a warrant remain presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The government may overcome this presumption, however, as "the ultimate

touchstone of the Fourth Amendment is 'reasonableness.'" *Id.*

A brief detention short of traditional arrest, like a traffic stop, constitutes a seizure within the meaning of the Fourth Amendment. An officer may effectuate a traffic stop only if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . .." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "[T]he officer in question 'must be able to articulate more than an 'inchoate and unparticularized suspicion' or 'hunch' of criminal activity.'" *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000)).

"Although the level of suspicion required for a brief investigatory stop is less demanding than that for probable cause, the Fourth Amendment nevertheless requires an objective justification for such a stop." *Montero-Camargo*, 208 F.3d at 1129 (citing *Sokolow*, 490 U.S. at 7). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *Montero-Camargo*, 208 F.3d at 1129 (emphasis removed). "An investigatory stop of a vehicle is reasonable under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006).

A person on probation retains their privacy expectations, although their privacy interests are reduced. *State v. Conley*, 415 P.3d 473, 476 (Mont. 2018.) "A probation officer may search a probationer's person, vehicle, and residence and the probationer 'must submit to such search,' upon the probation officers 'reasonable suspicion that the offender has violated the conditions of supervision.'" *Id*. (quoting Admin. R. M. 20.7.1101(7)). The Montana Supreme Court "has determined that a probation officer is granted a 'degree of flexibility' to determine how to exercise [their] supervisory powers." *Id*. (quoting *State v. Burke*, 766 P.2d 254, 256-57 (Mont. 1988)). The U.S. Supreme Court and the Ninth Circuit have confirmed that "warrantless searches of probationers' residences are permissible under the Fourth Amendment when they are authorized by a condition of probation and supported by reasonable suspicion of criminal activity." *United States v. Mayer*, 560 F.3d 948, 956 (9th Cir. 2009) (citing *United States v. Knights,* 534 U.S. 112, 121–22 (2001)).

## DISCUSSION

Spadt argues that the state probation officers lacked reasonable suspicion to search his car. (Doc. 42 at 10.) Spadt concedes that the initial traffic stop of his car proves legal due to his failure to signal a turn. (*Id*.) Spadt asserts that the subsequent warrantless search of the car proves unconstitutional because the officers had lost any reasonable suspicion of narcotics related activity and otherwise had no justification to intrude on his privacy. (*Id*. at 10, 8.)

The Government argues that the probation officers had reasonable suspicion to search Spadt's car for the following reasons: (1) Spadt initially pretended not to remember if he was on probation after Officer O'Meara asked, although Spadt eventually admitted that he was on probation; (2) the Great Falls State Probation Office checked the chronological notes in Spadt's probation filed and it appeared that Spadt lacked permission to be in Great Falls and that Spadt had not contacted probation since October, 2024; and (3) the other man in the car, Kelley, identified himself as a person with warrants for his arrest. (Doc. 46 at 11.)

Spadt argues that little to no reasonable suspicion of narcotics related activity existed after O'Meara determined that the driver of the white Pontiac was not involved in drug activity. (Doc. 42 at 9.) Spadt fails to address, however, whether reasonable suspicion existed related to Spadt's noncompliance with his probation conditions. The probation officers knew that it was more likely than not that Spadt had been violating at least one condition of his supervision.

The Government asserts that "[p]robationary searches are lawful when there is reasonable suspicion of probationary violations or reasonable suspicion of criminal activity." (Doc. 46 at 13, citing *United States v. Stokes*, 292 F.3d 964 (9th Cir. 2002).) *Stokes* does not explicitly state that proposition, but it relies on *Knights*, which states that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough

likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121.

*Knights* focuses only on "criminal activity," however, and does not state that any violation of a probation condition suffices to generate reasonable suspicion. *Id*. *Stokes* similarly involved suspected criminal activity beyond violations of probation conditions. 292 F.3d at 966. *Stokes* and *Knights* fail to provide support for the argument that suspicion of probation violations (like location violations) proves sufficient to justify a warrantless search. *Stokes* and *Knight* instead require suspicion of criminal activity.

Spadt's probation conditions stated that "[u]pon reasonable suspicion, as ascertained by a Probation/Parole Officer, my [] vehicle, [] may be searched . . . without a warrant . . .." (Doc. 46 at 4, n. 4.) This condition appears to suggest that even reasonable suspicion of any probation violation proves sufficient to justify a search. Other courts have determined that "reasonable suspicion that the probationer has violated the terms of his probation is sufficient to justify a search." *United States v. Becker*, 534 F.3d 952, 956 (8th Cir. 2008) (citing *United States v. Brown,* 346 F.3d 808, 811 (8th Cir. 2003)). The Ninth Circuit also has stated that "[t]he Fourth Amendment allows officers to search the residence of a probationer [] without a warrant upon reasonable suspicion of a probation violation." *United States v. Franklin*, 603 F.3d 652, 655 (9th Cir. 2010). The actual dispute differed in *Franklin*

and the Ninth Circuit did not analyze the basis of the reasonable suspicion. *Id*. This authority supports the conclusion that suspicion of a probation violation can be equated to suspicion of criminal activity such that it proves sufficient to justify a warrantless probation search.

Regardless, the officers here likely had reasonable suspicion of general criminal activity, despite Spadt's argument that the stop of the white Pontiac erased such reasonable suspicions. (Doc. 42 at 10.) "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *Montero-Camargo*, 208 F.3d at 1129 (emphasis removed). The officers knew of the previous allegedly suspicious interaction between Spadt, the people with him, and the driver of the white Pontiac. The officers observed the man and the woman walk past the scene and watch intently while O'Meara pulled over the white Pontiac. Officers observed those same two people later enter Spadt's Silverado during the strange drive-by and pickup near the Rescue Mission.

Officers knew that one of the passengers in Spadt's Silverado, Kelley, had warrants for his arrest. Finally, officers knew of Spadt's apparent violation of his probation conditions. O'Meara further testified that he had not dispelled all his suspicions of the white Pontiac's involvement in drug activity but merely saw no evidence or drug paraphernalia in plain view and determined that it proved prudent

to instead avoid letting the Chevy Silverado and its occupants drive away.

All these articulable facts may be considered with objective and reasonable inferences to form a basis for a particularized suspicion. *Montero-Camargo*, 208 F.3d at 1129. These facts permit the officers to articulate more than a "'hunch' of criminal activity." *Id*. The "totality of the circumstances" demonstrate that the search of Spadt's vehicle was reasonable under the Fourth Amendment. *See Ohio v. Robinette,* 519 U.S. 33, 39 (1996) (noting the general Fourth Amendment approach of "examining the totality of the circumstances").

## ANALYSIS

Accordingly, **IT IS HEREBY ORDERED** that Spadt's Motion to Suppress (Doc. 41) is **DENIED** in accordance with the above order**.**

**DATED** this 29th day of April, 2026.

_____
Brian Morris, Chief District Judge
United States District Court